**KING FISHER MARINE SERVICE, INC., a Texas corporation, Plaintiff,**

v.

**21st PHOENIX CORPORATION, f/k/a The Hanson Development Company, a Delaware corporation, Defendant–Third–Party–Plaintiff–Appellee,**

v.

**LANGAN ENGINEERING ASSOCIATES, INC., a corporation, Third–Party–Defendant–Appellant,**

**Highlands Insurance Company, a Texas corporation, Third–Party–Defendant.**

**No. 87–2478.**

United States Court of Appeals, Tenth Circuit.

Jan. 10, 1990.

Kevin M. Fowler (John C. Frieden, with him on the brief) of Frieden & Forbes, Topeka, Kan., for defendant-third-party-plaintiff-appellee.

Richard F. Hayse (Anne L. Baker, with him on the brief) of Edison, Lewis, Porter & Haynes, Topeka, Kan., for third-party-defendant-appellant.

Before LOGAN and BRORBY, Circuit Judges, and ALLEY,* District Judge.

BRORBY, Circuit Judge.

Appellant Langan Engineering Associates (Langan), third-party defendant below, seeks to set aside a 1979 judgment of the federal district court of Kansas on the ground that the judgment is void for lack of subject matter jurisdiction. The district court (Rogers, J.) denied Langan's motion for relief under Fed.R.Civ.P. 60(b)(4), holding it had ancillary jurisdiction of third-party plaintiff Hanson Development Co.'s (Hanson's) claims against Langan and did

---

* The Honorable Wayne E. Alley, United States District Judge for the Western District of Okla-homa, sitting by designation.

not abuse its discretion in exercising that jurisdiction. *King Fisher Marine Serv., Inc. v. Hanson Dev. Co.*, 717 F.Supp. 727 (D.Kan.1987). Langan's appeal squarely raises, apparently for the first time before this court, the question whether a defendant may join with its proper third-party indemnity claim other claims it may have against the third-party defendant. We hold that under the circumstances of this case it may, and we affirm.

## I. STATEMENT OF THE CASE AND FACTS

This case involves contract claims concerning the construction of a shopping center in Wichita, Kansas. The facts are set forth at 717 F.Supp. at 728. The original suit was filed in state court in 1972 by King Fisher Marine Service (King Fisher), a Texas corporation, against Hanson Development Company (Hanson is now known as the 21st Phoenix Corporation), a Delaware corporation with its principal place of business in New Jersey. King Fisher sought, *inter alia*, money allegedly due it under its contract with Hanson for the performance of site fill work and additional damages for construction delays.

Hanson removed the action to federal court on the grounds of diversity and subsequently filed an amended answer, a counterclaim for delay damages against King Fisher, and a third-party complaint against Langan Engineering Associates (Langan), whom Hanson had hired to conduct site evaluation and contract supervision. Langan's principal place of business was also New Jersey; thus there was no diversity between the third-party litigants. Hanson's third-party complaint asserted pass-through claims against Langan under Fed. R.Civ.P. 14(a). It also asserted a claim for damages in excess of the pass-through claims, which it asserted were due to Langan's delays if not to King Fisher's delays as alleged in its counterclaim against King Fisher. The contract claims between King Fisher and Hanson were settled immediately prior to trial. Trial proceeded on Hanson's third-party claim, but Langan did not appear. The court considered evidence and argument by Hanson and awarded Hanson a judgment of more than $155,000.00 on its delay damages claim against Langan.

Langan did not appeal. Instead, on October 3, 1983, it filed a rule 60(b)(4) motion to set aside the judgment on the ground that it had no notice of the trial date or the entry of judgment. The federal district court denied the motion, and we affirmed. *King Fisher Marine Serv., Inc. v. 21st Phoenix Corp.*, No. 84–1025 (10th Cir. Sept. 11, 1985). Approximately one year later Langan filed the instant rule 60(b)(4) motion to vacate the judgment, asserting the lack of diversity between it and Hanson and the absence of ancillary jurisdiction of the delay damages claim under the Supreme Court's analysis in *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). The question of the district court's subject matter jurisdiction of the delay damages claim had not been litigated previously by the parties nor considered by the court. The district court held it had constitutional and statutory authority to exercise jurisdiction of Hanson's third-party claims against Langan and denied Langan's motion. 717 F.Supp. at 730. Langan has appealed.

## II. ANALYSIS

The parties' arguments can be distilled as follows: Appellant Langan argues that, because there was no diversity between Langan and Hanson and no federal question (the delay damages claim was based on state law), ancillary jurisdiction was required over the delay damages claim. However, that claim was not "logically dependent upon" the original plaintiff's claim against defendant Hanson; therefore, under *Owen Equipment*, 437 U.S. at 376, 98 S.Ct. at 2403, the district court lacked jurisdiction to hear the claim. Langan further contends its rule 60(b)(4) motion is a direct attack on a judgment that lacked jurisdiction and is therefore void; thus, the judgment can be vacated under rule 60(b)(4).

Hanson, on the other hand, argues that its delay damages claim against Langan is logically related to, or logically entwined with, King Fisher's claim against Hanson,

over which the court did have jurisdiction on the basis of diversity. Because a court has jurisdiction to determine the entire case or controversy before it, the district court had ancillary jurisdiction over the delay damages claim. As to the rule 60(b)(4) motion, Hanson argues that Langan's challenge of the judgment is barred by res judicata or, alternatively, that an erroneous determination and exercise of statutory jurisdiction do not render a judgment "void" for purposes of a rule 60(b)(4) attack. In other words, Hanson contends the district court properly exercised jurisdiction, but even if it did not, rule 60(b)(4) is not available to challenge the judgment.

### A. Standard of Review

■ In reviewing the district court's determination that its judgment is not void for lack of subject matter jurisdiction, this court reviews *de novo. Jones v. Giles,* 741 F.2d 245, 247 (9th Cir.1984); *V.T.A., Inc. v. Airco, Inc.,* 597 F.2d 220, 223–24 nn. 7–8 (10th Cir.1979). While the district court suggested that the standard might be abuse of discretion, 717 F.Supp. at 729, relief is not discretionary if a judgment is void. *See V.T.A., Inc.* at 223–24 nn. 7–8; 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2862, at 197 (1973). The trial court is correct, however, that once it has been determined that jurisdiction exists we review a court's decision whether to exercise jurisdiction under an abuse of discretion standard, *United States v. City of Twin Falls,* 806 F.2d 862, 868 (9th Cir. 1986), *cert. denied,* 482 U.S. 914, 107 S.Ct. 3185, 96 L.Ed.2d 674 (1987); *Dahlberg v. Becker,* 581 F.Supp. 855, 865 (N.D.N.Y.), *aff'd,* 748 F.2d 85 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85

L.Ed.2d 144 (1985). *See* C. Wright & A. Miller, § 1444, at 234–37 (1971), 97–98 nn. 1–2 (1989 Supp.).

### B. Subject Matter Jurisdiction

■ The law among the circuits concerning the scope of ancillary jurisdiction is in some disagreement, and there is no Tenth Circuit case on all fours with the case at bar. It is well settled, however, that a court has ancillary jurisdiction of a defendant's proper rule 14(a) claim [1] against a third-party defendant without regard to whether there is an independent basis of jurisdiction (e.g., diversity between the third-party litigants), so long as the court has jurisdiction of the main claim between the original parties. *Dery v. Wyer,* 265 F.2d 804 (2d Cir.1959); 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1444, at 223–25 (1971 & 1989 Supp.) (cases cited in notes 68–69). *See Moor v. County of Alameda,* 411 U.S. 693, 715, 93 S.Ct. 1785, 1798, 36 L.Ed.2d 596 (1973). Here, the district court had jurisdiction of King Fisher's claims against Hanson based on diversity of citizenship. Langan does not contest that the court consequently had jurisdiction over Hanson's pass-through, third-party claim against it. It disputes only the court's authority to decide Hanson's additional claim for delay damages.

Both parties agree there is no independent basis of jurisdiction over Hanson's delay damages claim against Langan. Both Hanson and Langan are residents of New Jersey, and the claim was based on state law. Thus, the court could properly decide the claim only if it falls within its ancillary jurisdiction.[2]

---

**1.** Fed.R.Civ.P. 14(a) provides in relevant part:

  (a) **When Defendant May Bring in Third Party.** At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action *who is or may be liable to [him] for all or part of the plaintiff's claim against the third-party plaintiff.*

  (Emphasis added.) Rule 14's provision for impleading parties is narrow: the third-party claim must be derivative of the original claim. *See* C. Wright & A. Miller, § 1441, at 199, 206.

  Here, Hanson's pass-through claim against Langan was a proper rule 14(a) claim. It sought indemnification for any liability for damages found in favor of King Fisher against Hanson. This claim was not decided by the district court because King Fisher's claims against Hanson were settled prior to trial.

**2.** Under Fed.R.Civ.P. 18(a) a party asserting a claim (original claim, counterclaim, crossclaim, or third-party claim) may join as many claims as it has against an opposing party. However, the federal rules do not confer jurisdiction on the federal courts, Fed.R.Civ.P. 82;

### 1. Owen Equipment

The Appellant relies heavily on *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), which it asserts holds that "a common nucleus of operative fact" is not the only requirement for ancillary jurisdiction in a diversity case; in addition, there must be a "logical dependence" between the primary and third-party claims. Brief of Appellant at 13, 17 (citing 437 U.S. at 376, 98 S.Ct. at 2403). We believe the Appellant overstates *Owen Equipment*'s holding. It overlooks, as have certain courts that have relied on *Owen Equipment* to resolve questions of jurisdiction, the Court's own caveat that, "in determining whether jurisdiction over a nonfederal claim exists, the *context* in which the nonfederal claim is asserted is *crucial.*" 437 U.S. at 375–76, 98 S.Ct. at 2403–04 (emphasis added). It also accords undue significance to the Court's use of the term "logical dependence" to characterize an ancillary claim. In order to explain these conclusions, we begin with a discussion of *Owen Equipment* and its predecessors.

Mrs. Kroger, the plaintiff in *Owen Equipment* and an Iowa resident, brought a wrongful death action in federal court against the Omaha Public Power District (OPPD), a Nebraska corporation, whom she alleged caused the electrocution death of her husband by its negligent construction and maintenance of a power line. OPPD then filed a third-party complaint against Owen Equipment, an Iowa corporation and owner of the crane Kroger had been operating at the time of his death, alleging that its negligence had caused Kroger's death. Subsequently, Mrs. Kroger amended her complaint, naming Owen Equipment as an additional defendant.

The Court held that there was no jurisdiction to hear Mrs. Kroger's claim against Owen Equipment. Permitting her to amend her complaint in this way would have defeated the requirement of complete diversity between plaintiffs and defendants, thus allowing her to do what she could not have done initially—bring suit against both Owen and OPPD in federal court. The Court distinguished *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), on which the court of appeals had erroneously relied in upholding the district court's exercise of jurisdiction. *Gibbs*, the Court explained, involved "pendent jurisdiction, which concerns the resolution of a plaintiff's federal- and state-law claims against a single defendant in a single action." 437 U.S. at 370, 98 S.Ct. at 2401. *Owen Equipment*, on the other hand, involved "state-law tort claims against two different defendants," apparently raising the issue of the existence of ancillary jurisdiction. *Id.*[3] Nevertheless, the Court con-

---

hence, a court may decide claims joined under rule 18(a) only if independent jurisdiction and venue requirements are satisfied. See *infra* section B.2. of the text for a discussion of how certain courts have dealt with rule 18(a) in deciding questions of ancillary jurisdiction.

**3.** The confusion in the courts over *Owen Equipment* stems in part from subsequent applications of its holding by the lower courts to sets of facts it was not crafted to fit. The first seeds of confusion, however, were sown by the Supreme Court itself, when it expressed doubt about the precise jurisdictional doctrine at issue in *Owen Equipment* and in its predecessor, *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). Somewhat cryptically the *Owen Equipment* Court observed: "No more than in [*Aldinger*] is it necessary to determine here 'whether there are any "principled" differences between pendent and ancillary jurisdiction; or, if there are, what effect *Gibbs* had on such

differences.'" 437 U.S. at 370 n. 8, 98 S.Ct. at 2401 n. 8 (quoting 427 U.S. at 13, 96 S.Ct. at 2420).

Yet in apparent contradiction of its "principled differences" comment, the *Owen Equipment* Court itself distinguished between pendent and ancillary jurisdiction in noting the court of appeals' misplaced "reli[ance] upon the doctrine of ancillary jurisdiction, whose contours it believed were defined ... in [*Gibbs*]," when in fact "*Gibbs* ... involved pendent jurisdiction, which concerns the resolution of a plaintiff's federal- and state-law claims against a single defendant in one action." 437 U.S. at 370, 98 S.Ct. at 2401.

The confusion persists in the Court's most recent reappraisal of *Owen Equipment*:

We reaffirmed and further refined our approach to *pendent-party jurisdiction* in *Owen Equipment....* We held that the jurisdiction which § 1332(a)(1) confers over a "matter in controversy" between a plaintiff and defen-

cluded that the two cases presented "two species of the same generic problem: Under what circumstances may a federal court hear and decide a state-law claim arising between citizens of the same State?" *Id.*

The Court found that the court of appeals had misapprehended the scope of the *Gibbs* doctrine. *Gibbs* held:

> Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim "arising under [the] Constitution [and] Laws of the United States ..." and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case." ... The state and federal claims must derive from a common nucleus of operative fact. But if ... a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole.

383 U.S. at 725, 86 S.Ct. at 1138, *quoted in Owen Equipment*, 437 U.S. at 371, 98 S.Ct. at 2401 (emphasis in original, citations omitted).

According to the *Owen Equipment* Court, "*Gibbs* delineated the constitutional limits of federal judicial power." 437 U.S. at 371, 98 S.Ct. at 2401. But *Owen Equipment* made it clear that determining a court's constitutional power to decide a case (the object of the *Gibbs* "common nucleus of operative fact" test) is "merely the first hurdle" in deciding whether jurisdiction exists. 437 U.S. at 372, 98 S.Ct. at 2401. *Owen Equipment* further established that

there must be an examination of the posture [or context] in which the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim, in order to determine whether "Congress in [that statute] has ... expressly or by implication negated" the exercise of jurisdiction over the particular nonfederal claim.

437 U.S. at 373, 98 S.Ct. at 2402 (quoting *Aldinger v. Howard*, 427 U.S. at 18, 96 S.Ct. at 2422); *see also* 437 U.S. at 376, 98 S.Ct. at 2403. Thus, the Constitution confers on federal courts the power to decide all claims deriving from a common nucleus of operative fact, but Congress may restrict the exercise of that power in certain circumstances.

■ Here, there is no dispute that Hanson's delay damages claim against Langan arises out of the same nucleus of operative facts as do King Fisher's claims against Hanson, that is, completion of the fill work for the Wichita shopping center project. The district court thus held and we agree that the court possessed the *constitutional* power to hear the additional delay damages claim. 717 F.Supp. at 730; Brief of Appellant at 15. Langan does not deny that constitutional power existed, but it claims that the secondary jurisdictional tests set forth in *Owen Equipment* —the "posture of the case and the statutory grant of jurisdiction" (here, the diversity statute, 28 U.S.C. § 1332)—preclude jurisdiction over the delay damages claim. Brief of Appellant at 15–16, 28–29 (citing 437 U.S. at 373, 96 S.Ct. at 2402).

The "posture" in which the nonfederal claim in *Owen Equipment* was raised was

---

dant of diverse citizenship cannot be read to confer *pendent jurisdiction* over a different, nondiverse defendant, even if the *claim* involving that other defendant meets the *Gibbs* test.

*Finley v. United States*, — U.S. —, 109 S.Ct. 2003, 2007, 104 L.Ed.2d 593 (1989) (emphasis added). (The *Gibbs* test to which the Court referred is the familiar "common nucleus of operative fact" test used to define the contours of a "case" and, hence, a federal court's power to hear all claims presented to it.)

We do not feel compelled to take on the pendent-ancillary jurisdictional dilemma skirted

by the Supreme Court in *Aldinger* and *Owen Equipment* and apparently not since revisited by it. Other courts have been similarly disinclined. *E.g., Danner v. Himmelfarb*, 858 F.2d 515, 523 (9th Cir.1988), ("[w]e do not find it necessary in this case to decide 'whether there are any "principled" differences between pendent and ancillary jurisdiction'"), *cert. denied*, — U.S. —, 109 S.Ct. 2067, 104 L.Ed.2d 632 (1989). Nevertheless, we must attempt to determine what guidelines the Court has established in the *Gibbs–Aldinger–Owen Equipment* line of cases with respect to our power to decide the case at bar.

that of an added state law claim by the original plaintiff in a diversity case against a second, nondiverse defendant. The Court held that, because the plaintiff had voluntarily chosen the federal forum, she could not complain if the limited jurisdiction of the federal courts precluded her from bringing a separate, state-law claim. A state court could have heard all of her claims. 437 U.S. at 376, 98 S.Ct. at 2403. The Court contrasted this situation with that of a typical ancillary claim, specifically the impleader by a defendant of a third-party defendant: "[A]ncillary jurisdiction typically involves claims by a defending party haled into court against his will...." *Id.*

Here we are presented with the latter situation—a defending party, Hanson, "haled into court" involuntarily. True, Hanson could have brought all its claims in state court, and it did "choose" the federal forum by exercising its right as a defendant to remove King Fisher's original state action. But we do not believe these facts place this case on a par with *Owen Equipment,* such that it requires dismissal of Hanson's delay damages claim. For one thing, we agree with the district court that its exercise of jurisdiction over all Hanson's claims against Langan promoted Hanson's statutory removal rights "by not forcing Hanson to choose between defending against [King Fisher's] claims in state court and bringing closely related claims against Langan." 717 F.Supp. at 729. A defendant is not first required to demonstrate that its case would be prejudiced in state court, as the Appellant appears to suggest. *See* Brief of Appellant at 24–25. Furthermore, this case does not pose the danger with which the *Owen* court was concerned—the potential for a plaintiff to defeat the *requirement of complete diversity* by suing only diverse defendants and waiting for them to implead nondiverse defendants. 437 U.S. at 374 & n. 17, 98 S.Ct. at 2403 & n. 17; *see also* 717 F.Supp. at 730.

The Court recently observed in *Finley v. United States,* — U.S. —, 109 S.Ct. 2003, 2007–08, 104 L.Ed.2d 593 (1989), that the "most significant element of 'posture' or of 'context' in [this] case ... is precisely that the added claims involve added parties over whom no independent basis of jurisdiction exists." (Citations omitted.) The same concern was at the heart of *Owen Equipment,* but it is not implicated here. Here, Langan was not "added" as a party by the assertion of the delay damages claim, but by impleader under rule 14(a). As previously noted, a court has ancillary jurisdiction of a defendant's proper rule 14(a) claim against a third-party defendant without regard to whether there is an independent basis of jurisdiction, so long as the court has jurisdiction of the main claim between the original parties. 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1444, at 223–25 (1971 & 1989 Supp.) (cases cited in notes 68–69). In fact, the Court in *Owen Equipment* noted that "the exercise of ancillary jurisdiction ... has often been upheld in situations involving impleader." 437 U.S. at 375, 98 S.Ct. at 2403. The precise issue here is, not whether Langan was properly added as a party, but whether, once properly joined as a party, the delay damages claim was properly asserted against it.

*Owen Equipment* explained why a claim impleading a third party has been considered ancillary: "A third-party complaint depends at least in part upon the resolution of the primary lawsuit. Its relation to the original complaint is thus not mere factual similarity but logical dependence." 437 U.S. at 376, 98 S.Ct. at 2404 (citation omitted). The Court contrasted such a claim with the attempted state law claim against the nondiverse defendant in *Owen.* The latter, the Court found, "was entirely separate from [the plaintiff's] original claim against the [diverse defendant], since the [nondiverse defendant's] liability to her depended not at all upon whether or not [the diverse defendant] was also liable. Far from being an ancillary and dependent claim, it was a new and independent one." 437 U.S. at 376, 98 S.Ct. at 2404.

■ Appellant has interpreted the foregoing language as *requiring* "logical dependence" in order to find ancillary jurisdiction of a claim sought to be added. A number of courts are in apparent agree-

ment with that assessment. *See, e.g., National Union Fire Ins. Co. of Pittsburgh, Pa. v. Continental Ill. Corp.,* 661 F.Supp. 964, 969 (N.D.Ill.1987); *May's Family Centers, Inc. v. Goodman's, Inc.,* 104 F.R.D. 112, 115 (N.D.Ill.1985); *Dahlberg v. Becker,* 581 F.Supp. 855, 865 (N.D.N.Y.) *aff'd,* 748 F.2d 85 (2d Cir.1984) *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). *Cf. Gus T. Handge & Son Painting Co. v. Douglass State Bank,* 543 F.Supp. 374, 379–80 (D.Kan.1982). It should be recognized, however, that the Court in *Owen Equipment* was not stating a *prerequisite* of ancillary jurisdiction, but a common *feature* of third-party indemnity claims (i.e., that the third-party defendant's liability to the third-party plaintiff "depends at least in part" on whether the third-party plaintiff is first found liable to the plaintiff in the original action). 437 U.S. at 376, 98 S.Ct. at 2403. The *Owen Equipment* Court's reference to *Moore v. New York Cotton Exch.,* 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926), is instructive in this regard.

In support of its "logical dependence" characterization, the Court cited the test established in *Moore* for determining a "transaction" in the context of a compulsory counterclaim.[4] " 'Transaction,' " the *Moore* Court held, "is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their *logical relationship*." 270 U.S. at 610, 46 S.Ct. at 371 (emphasis added). *Moore* involved a suit by the Odd–Lot Cotton Exchange (by its president Moore) seeking, *inter alia,* a decree that the New York Cotton Exchange was a monopoly and enjoining it from refusing to supply members of the Odd–Lot Exchange with price quotations. The New York Exchange counterclaimed for an injunction against the Odd–Lot's practice of "purloining" the price quotations. The *Moore* Court found that the New York Exchange's refusal to supply price quotations to the plaintiff was

one of the links in the chain which constitutes the transaction upon which appellant here bases its cause of action. It is an important part of the transaction constituting the subject-matter of the counterclaim. It is one circumstance without which neither party would have found it necessary to seek relief.... That [the facts alleged by the parties] are not precisely identical, or that the counterclaim embraces additional allegations ... does not matter....

So close is the connection between the case sought to be stated in the [complaint] and that set up in the counterclaim, that it only needs the failure of the former to establish the foundation for the latter; but the relief afforded by the dismissal of the [complaint] is not complete without [providing the relief sought by the counterclaim].

*Id.*

*Moore* thus sheds light on the *Owen Equipment* Court's statement concerning the frequent, proper exercise of ancillary jurisdiction in cases involving impleader, counterclaims, and cross-claims. 437 U.S. at 375, 98 S.Ct. at 2403. Considered in this context, "logical dependence" takes on significance, not as an absolute requirement, but as evidence of the interrelatedness of the claims as components of the same transaction or series of transactions. Analogizing the case at bar to the second paragraph quoted from *Moore* above, if Hanson was liable to King Fisher for damages resulting from the delay in completing the fill, but the delay was caused by Langan and also resulted in damages to Hanson, then relief to Hanson would not be complete without providing it the relief sought in its additional delay damages claim.

That *Owen Equipment* did not intend to establish a rigid test for the exercise of ancillary jurisdiction is best evidenced by the Court's own concluding statement:

It is not unreasonable to assume that, ·in generally requiring diversity, Con-

---

**4.** A compulsory counterclaim is one " 'arising out of the transaction which is the subject matter of the suit,' [and which] must be pleaded," the Court explained. 270 U.S. at 609, 46 S.Ct. at 371 (quoting equity rule 30).

gress did not intend to confine the jurisdiction of federal courts so inflexibly that they are unable to protect legal rights or *effectively to resolve an entire, logically entwined lawsuit.* Those practical needs are the basis of the doctrine of ancillary jurisdiction.

437 U.S. at 377, 98 S.Ct. at 2404 (emphasis added). The district court in the case at bar was persuaded by this reasoning. It acknowledged that "other claims [presumably the delay damages claim] were made which were not logically dependent on the main action, although they were logically related." 717 F.Supp. at 730. But the court believed that a logical relationship, without "dependence," is sufficient to confer subject matter jurisdiction because it permits "the resolution of 'an entire, logically entwined lawsuit.'" *Id.* Other courts have reached similar conclusions. *E.g., Travelers Ins. Co. v. First Nat'l Bank of Shreveport,* 675 F.2d 633, 638 (5th Cir.1982) ("key is ... 'logical relationship'"); *Cumberland Village Hous. Assocs. v. Inhabitants of Cumberland,* 609 F.Supp. 1481, 1486 (D.Me.1985) (sufficient that claims, although "not necessarily logically dependent," were "tightly intertwined"). *Cf. United States v. City of Twin Falls,* 806 F.2d 862, 867–68 (9th Cir.1986) *cert. denied,* 482 U.S. 914, 107 S.Ct. 3185, 96 L.Ed.2d 674 (1987) ("[T]here is a close factual and logical nexus between the pendent claims added under Rule 18(a) and the original claim. Therefore, pendent jurisdiction supports these claims.");[5] *Lykins v. Pointer Inc.,* 725 F.2d 645, 648 n. 2 (11th Cir.1984) (lack of logical dependence between claims did not defeat ancillary jurisdiction because statute held not to preclude procedural posture of claim); *Eagerton v. Valuations, Inc.,* 698 F.2d 1115, 1118–20 (11th Cir.1983) (in discussing ancillary jurisdiction, court did not refer at all to *Owen Equipment*'s "logical dependence" test); *Federal Deposit Ins. Corp. v. Otero,* 598 F.2d 627, 633 (1st Cir.1979)

(court stated: "We doubt that this tangential relationship would support the pendent jurisdiction enumerated in [*Owen*]," and "there is serious doubt" that rule 18 can be used "to join a claim against the third party which is not related to plaintiff's claim," but did not reach issue of what degree of relatedness would be sufficient).

We agree with the district court and the foregoing cases. We decline to find, as Appellant Langan apparently suggests, that "logical dependence" as used in *Owen Equipment* requires something more or different than the logical connection between claims comprising "an entire, logically entwined lawsuit."

■ But even if a logical relationship without dependence is sufficient, the Appellant further denies there is any logical connection between Hanson's delay damages claim against Langan and any claim asserted by King Fisher. Brief of Appellant at 21–23. The district court found, however, that the additional claim asserted by Hanson "come[s] from a nucleus of facts common to the other claims in the lawsuit" and is "logically related to the main action." 717 F.Supp. at 729, 730. We must accept the district court's appraisal of the facts unless clearly erroneous. *Equal Employment Opportunity Comm'n v. General Lines, Inc.,* 865 F.2d 1555, 1558 (10th Cir. 1989). Both King Fisher and Hanson asserted claims for delay damages. Because Langan was designated Hanson's representative under the construction contract and all work by King Fisher was subject to the approval of Langan, arguably any delays by Langan would give rise to damages to both Hanson and King Fisher. *See* Brief of Appellant at 2. So viewed, Hanson's claim against Langan for damages due to delay would clearly seem to be, as the district court found, logically related to King Fisher's claim. It could not reasonably be characterized as "independent" or "entirely separate." *Owen Equipment,* 437 U.S. at 376, 98 S.Ct. at 2404.[6] The

5. See discussion of *United States v. Twin Falls* below.

6. Appellee suggests that jurisdiction can be supported on the basis of 28 U.S.C. § 1441(c),

which applies to the removal to federal court of cases that involve separate and independent claims. Section 1441(c), however, is inapplicable to this action.

Appellant's argument to this effect is without merit.

■ We have determined the district court had the constitutional power to hear Hanson's delay damages claim and that the "posture" of the claim did not preclude jurisdiction. We next undertake the final consideration mandated by *Aldinger* and *Owen Equipment*—whether Congress has "'expressly or by implication negated' the exercise of jurisdiction over the particular nonfederal claim." 437 U.S. at 373, 98 S.Ct. at 2402 (quoting 427 U.S. at 18, 96 S.Ct. at 2422). We begin with a brief look at three cases in which the Court has found evidence of such congressional intent.

In both *Owen Equipment* and *Aldinger* the Court determined that Congress by statute had foreclosed the exercise of federal jurisdiction. In *Owen Equipment* the Court held that the diversity statute, 28 U.S.C. § 1332(a)(1), precluded the extension of ancillary jurisdiction to a plaintiff's cause of action against a citizen of the same state. 437 U.S. at 377, 98 S.Ct. at 2404. *Aldinger* involved federal civil rights claims under 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983, and state claims under Washington law by a discharged county employee against the county, certain county officers, and the county commissioners. The Court held that, in light of the exception of counties from persons subject to suit under § 1983 and, by reference, under § 1343, 427 U.S. at 16–17, 96 S.Ct. at 2421–2422, the jurisdiction of the federal courts did not extend to joinder of counties for purposes of asserting state law claims not within the court's diversity jurisdiction.

The Court concluded that "Congress has by implication declined to extend federal jurisdiction over a party such as Spokane County." *Id.* at 19, 96 S.Ct. at 2422. More recently, in *Finley v. United States*, ─ U.S. ─, 109 S.Ct. 2003, 2008, 104 L.Ed.2d 593 (1989), the Court held that the Federal Tort Claims Act, 28 U.S.C. § 1346(b), which confers jurisdiction over "civil actions on claims against the United States," precludes federal jurisdiction of related claims against defendants other than the United States without an independent basis of jurisdiction.[7]

The relevant statute in this case, as in *Owen Equipment*, is the diversity statute. We note at the outset, however, that the Court's conclusion in *Owen Equipment* concerning the exercise of jurisdiction in those circumstances does not dictate our conclusion here. In our view, Congress has neither impliedly nor expressly negated the exercise of jurisdiction over Hanson's added third-party claim. First, the fact-specific approach established by the Court in *Aldinger* and subsequently followed in *Owen Equipment* defeats any argument that *Owen Equipment* compels a particular outcome in this case. Indeed, after holding that federal (pendent or ancillary) jurisdiction did not encompass the claims against the county in *Aldinger*, the Court cautioned that "[o]ther statutory grants *and other alignments of parties and claims* might call for a different result." 427 U.S. at 18, 96 S.Ct. at 2422 (emphasis added); *cf. Federal Deposit Ins. Corp. v. Otero*, 598 F.2d 627, 632 (1st Cir.1979) (and cases cited therein).[8] The Court considered

---

7. In support of this conclusion, the Court also noted that the relation between the petitioner's added claims and the original complaint was one of "mere factual similarity." 109 S.Ct. at 2008 (citing *Owen Equipment*, 437 U.S. at 376, 98 S.Ct. at 2404).

8. The *Aldinger* Court found it "quite unnecessary to formulate any general, all-encompassing jurisdictional rule," 427 U.S. at 13, 96 S.Ct. at 2419, noting that "the question of pendent-party jurisdiction is 'subtle and complex,'" and that "it would be as unwise as it would be unnecessary to lay down any sweeping pronouncement upon the existence or exercise of such jurisdiction." *Id.* at 18, 96 S.Ct. at 2422. With respect to its

decision not to formulate an all-inclusive rule, the Court offered the following comment:

> Given the complexities of the many manifestations of federal jurisdiction, together with the countless factual permutations possible under the Federal Rules, there is little profit in attempting to decide, for example, whether there are any "principled" differences between pendent and ancillary jurisdiction; or, if there are, what effect *Gibbs* had on such differences.

427 U.S. at 13, 96 S.Ct. at 2420; *see also* 437 U.S. at 370 n. 8, 98 S.Ct. at 2401 n. 8.

The Court adhered to this case-specific approach in *Owen Equipment*, placing heavy emphasis on the particular context in which the

it a "better approach ... to determine what *Gibbs* [the authority relied on by the appellant] did and did not decide, and to identify what we deem are important differences between the jurisdiction sustained in *Gibbs* and that asserted here." *Id.*, 427 U.S. at 13, 96 S.Ct. at 2420. Similarly, we must determine the important differences between the jurisdiction asserted in *Owen Equipment* and that asserted here and heretofore unaddressed by this circuit.

Second, in determining whether the "complete diversity" required by the statute, *see* 437 U.S. at 373, n. 13, 98 S.Ct. at 2402 n. 13 and cases cited therein, precludes a federal court from hearing Hanson's delay damages claim, we must keep in mind the *Owen Equipment* Court's prudent observation that, *"in generally requiring complete diversity,* Congress did not intend to confine the jurisdiction of federal courts so inflexibly that they are unable to protect legal rights or effectively to resolve an entire, logically entwined lawsuit." 437 U.S. at 377, 98 S.Ct. at 2404 (emphasis added).

Considered in light of *Finley*, the statutory (or congressional intent) analysis and the "posture" considerations mandated by *Aldinger* and *Owen Equipment* tend to overlap in the circumstances of this case.[9] As we have already explained, impleader of a nondiverse third-party defendant is a commonly accepted practice, generally conceded to come within the compass of a federal court's ancillary jurisdiction. We question how the purposes of requiring diversity of citizenship can be thwarted, once an "exception" has been made to allow the impleader of a nondiverse defendant, by allowing an additional, related claim against that party. In other words, if the diversity statute has not "expressly or by implication negated the exercise of jurisdiction" over the rule 14(a) claim, how can it be said to have done so with respect to additional, related claims? This is not to say that once in federal court a defendant should be subject to *any* claim another party may have against him. Proper application of the *Gibbs* "common nucleus of operative fact" test will prevent that abuse. But we search the Supreme Court's opinion in *Owen Equipment* in vain for a rationale for extending ancillary jurisdiction to the pass-through claim and not to other, logically related claims.

We find *Aldinger* in accord with this view. The Court was considering whether a county could be joined in a 42 U.S.C. § 1983 action for the purposes of asserting related state law claims against it, when the county could not be sued directly under the federal statute and there was no other basis of federal jurisdiction (e.g., diversity). It found that "[t]wo observations suffice for the disposition of the type of case before us." 427 U.S. at 18, 96 S.Ct. at 2422. In addition to the significance of congressional intent, the Court noted: "If the new party sought to be joined is not otherwise subject to federal jurisdiction, there is a more serious obstacle to the exercise of pendent jurisdiction than if parties already before the court are required to litigate a state-law claim." *Id.* The case before us fits the latter category; Langan was "already before the court," properly impleaded under the court's ancillary jurisdiction and rule 14(a).

Following the Court's lead in *Aldinger* and *Owen Equipment*, we have identified "what we deem are important differences," 427 U.S. at 13, 96 S.Ct. at 2420, between those cases and this one—the posture in which the nonfederal claim was raised here (by a defendant and third-party plaintiff),

nonfederal claim there was raised. 437 U.S. at 375–76, 98 S.Ct. at 2403–04 (citing 427 U.S. at 14, 96 S.Ct. at 2420). The Court decided only that a plaintiff in the circumstances of the petitioner could not assert against a nondiverse defendant in federal court a state-law claim that was "entirely separate" from her primary claim against the original defendant (over which the court had jurisdiction on the basis of diversity). 437 U.S. at 376, 98 S.Ct. at 2404.

9. As discussed above, *Finley*, 109 S.Ct. at 2007–08, held that the "most significant element of 'posture' or of 'context' in the present case ... is precisely that the added claims involve added parties over whom no independent basis of jurisdiction exists" (citations omitted). As already explained, that is not our case here. Langan was in federal court by virtue of the court's proper exercise of its ancillary jurisdiction of Hanson's rule 14(a) claim.

and the fact that the defending party (Langan) was already before the court, properly impleaded under rule 14(a). These differences suggest that the exercise of jurisdiction in this case was proper.

We acknowledge that "neither the convenience of litigants nor considerations of judicial economy" are alone sufficient "to justify extension of the doctrine of ancillary jurisdiction" to a plaintiff's state-law cause of action against a nondiverse defendant. *Owen Equipment*, 437 U.S. at 377, 98 S.Ct. at 2404. But in this case, these and other relevant prudential considerations only bolster our conclusion. "Both as a matter of policy and of logic," *Schwab v. Erie Lackawanna R.R. Co.*, 438 F.2d 62, 68 (3d Cir.1971), Hanson should be allowed to assert its additional claim against Langan. As the district court held, judicial economy and convenience were served by considering all the claims together, and the Appellant has asserted no prejudice or unfairness in the court's exercise of jurisdiction. Moreover, as stated earlier, exercising jurisdiction promoted Hanson's statutory removal rights. 717 F.Supp. at 729.

### 2. Third–Party Claim Case Law

Having examined our facts in light of the holdings of *Aldinger* and *Owen Equipment*, we next turn to the case law and commentators to ascertain how other courts have resolved jurisdictional issues like the one presented here. The standard treatises accord with our conclusion that the district court's exercise of jurisdiction was proper. Wright and Miller assert that, "[i]f the additional claim arises out of the same transaction or occurrence as the claim for liability over [i.e., the pass-through claim], the additional claim should be treated as ancillary for purposes of subject matter jurisdiction and venue." 6 *Federal Practice and Procedure* § 1452, at 118 (1989 Supp.). Similarly, Professor Moore writes: "The concept of ancillary jurisdiction also properly justifies taking jurisdiction over an additionally joined claim of the third-party plaintiff against the third-party defendant, provided the additionally joined claim is sufficiently related to the original claim to be deemed ancil-

lary." 3 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 14.26, at 14–112 (1989). Although the case law of the circuits is mixed, we believe the better reasoned decisions also support the result we reach today. We briefly review these cases, limiting our survey (in light of the Supreme Court's emphasis on the context in which a nonfederal claim is raised) to diversity cases involving third-party claims.

The case most often cited for the proposition that exercise of jurisdiction in these circumstances is authorized is *Schwab v. Erie Lackawanna R.R. Co.*, 438 F.2d 62 (3d Cir.1971). In *Schwab* (a pre-*Owen Equipment* case), a railroad employee injured in a collision between a train and a truck brought an FELA action against the railroad, which in turn impleaded the owner of the truck and the estate of the driver. In its third-party complaint, the railroad also asserted a claim against the nondiverse third-party defendants for damages to the locomotive in an amount less than the jurisdictional minimum. The Third Circuit relied on civil procedure rules 14 and 18(a) and the concept of ancillary jurisdiction, which it held was "broad enough to encompass this claim." 438 F.2d at 69; *accord Brooks v. Hickman*, 101 F.R.D. 19, 20 (W.D.Pa.1984).

The Third Circuit drew from several authorities in reaching this conclusion. First, the court quoted Professor Wright's comments on the occasion of the 1966 amendment to rule 18(a):

My hope would be that in determining [jurisdiction over additional third-party claims] the court would look to the factual relation between the third-party claim and the independent claim of the defendant....

[I]f the factual relationship is as close as in the example ... where the claim ... arises out of the very transaction which is the subject of the third-party claim, then it seems to me that within the existing knowledge about ancillary jurisdiction, [a court] ought to be able to [assert jurisdiction over the claim].

438 F.2d at 69 (quoting 42 F.R.D. 437 at 560–61). The court also relied on the reasoning of a leading treatise:

If the additional claim arises out of the same transaction or occurrence as the claim for liability over—and thus, by hypothesis as the original claim of plaintiff against defendant—it would seem, by analogy to principles settled in other areas, that the additional claim too should be treated as ancillary for purposes of jurisdiction and venue.

438 F.2d at 69–70 (quoting Barron & Holtzoff, 1A *Federal Practice and Procedure* § 426, at 43–44 (Supp.1969)). Finally, the court described a similar approach taken by another commentator:

If a defendant asserts a claim against a third-party defendant for contribution or indemnity, the defendant should be able to join with this claim a claim for damages for injuries which he received in the same transaction or occurrence. Since the third-party defendant is properly in the action, the original defendant should be able to plead all claims that arise out of the same transaction or occurrence in order to prevent several suits between the same parties on the same facts. Fraser, "Ancillary Jurisdiction and the Joinder of Claims in the Federal Court."

438 F.2d at 70 (quoting 33 F.R.D. 27, 39–40 (1963)).

The court found compelling the analogy to a compulsory counterclaim (which it believed was the object of Barron's & Holtzhoff's reference to "principles settled in other areas"), given that the railroad's claim for damages "arises out of the same set of facts as the claim for liability-over, and since the third-party defendants could assert against [the railroad] a claim arising out of the transaction or occurrence which is the subject of the third-party claim." 438 F.2d at 71.

The Appellant here argues that the reasoning of *Schwab* was later discredited by *Owen Equipment*. Brief of Appellant at 31. According to the Appellant, *Schwab* failed to consider the second test established by *Owen Equipment*—logical dependence. We have already concluded that the Appellant overstates the holding of *Owen Equipment* and makes an unwarranted distinction between logical dependence and logical relationship. We also credit the *Schwab* court for acknowledging it was "furrowing new ground" in its interpretation of rules 14(a) and 18 and that a district court's discretion concerning the disposition of multiple claims in a single action was not unlimited. Presaging *Owen Equipment* and *Aldinger*, it observed that a court cannot enlarge its discretion "simply by characterizing a claim as 'pendent' and invoking the broad language of [*Gibbs*] which arose in a different context and involved additional considerations." 438 F.2d at 71. The Third Circuit distinguished *Gibbs* from *Schwab* as we have distinguished *Owen Equipment* and *Aldinger* from this case: There, as here, ancillary jurisdiction had already attached by virtue of impleader. 438 F.2d at 71 n. 20.[10]

The standard treatises continue to rely on *Schwab* after *Owen Equipment* for the general proposition that the ancillary jurisdiction of the federal courts encompasses a state-law claim arising out of the same transaction or occurrence as a third-party impleader claim. *See, e.g.,* C. Wright & A. Miller, § 1452, at 118 (1989 Supp.). Moreover, Appellee Hanson argues persuasively that *Schwab* and similar cases

**10.** The Ninth Circuit later approved the result in *Schwab* but faulted the Third Circuit's suggestion that a third-party claim may come within the ancillary jurisdiction of the court because it is ancillary to another ancillary claim. *United States ex rel. Payne v. United Pacific Ins. Co.,* 472 F.2d 792, 795 & n. 9 (9th Cir.), *cert. denied,* 411 U.S. 982, 93 S.Ct. 2273, 36 L.Ed.2d 958 (1973) (referring to the statement in *Schwab* that "[f]or the purposes of jurisdiction … we believe that Erie's separate claim should survive, whether its claim be characterized as ancillary to the main claim or ancillary to the third-party claim which itself is ancillary to the original claim against the railroad," 438 F.2d at 70 (footnote omitted)). The Fifth Circuit, however, in *Nishimatsu Construction Co. v. Houston Nat'l Bank,* 515 F.2d 1200 (1975), appeared to agree with the disputed suggestion in *Schwab*. The court held that the added third-party claim "[fell] outside the pale of ancillary jurisdiction" because it "lack[ed] the *requisite* logical relationship *either* to the main claim *or* to the bank's impleader claim." 515 F.2d at 1205 (emphasis added).

are consistent with the general principles of ancillary jurisdiction recognized in the Tenth Circuit. Brief of Appellee at 15; *see, e.g., Jenkins v. Weinshienk,* 670 F.2d 915, 918 (10th Cir.1982) (ancillary jurisdiction rests on the premise that a federal court acquires jurisdiction of a case or controversy in its entirety); *United States v. Major Oil Corp.,* 583 F.2d 1152, 1160–61 (10th Cir.1978); *United States v. Acord,* 209 F.2d 709, 712 (10th Cir.) (regarding ancillary jurisdiction over third-party claims), *cert. denied,* 347 U.S. 975, 74 S.Ct. 786, 98 L.Ed. 1115 (1954). Thus, we do not believe *Owen Equipment* undermined the sound reasoning of *Schwab.*

The Fifth Circuit is basically in step with the Third. It views an added third-party claim as ancillary if it " 'bears a logical relationship to the aggregate core of operative facts which constitutes the main claim over which the court has an independent basis of federal jurisdiction.' " *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1205 (5th Cir.1975) (quoting *Revere Copper & Brass, Inc. v. Aetna Casualty & Surety Co.,* 426 F.2d 709, 714 (5th Cir.1970)). It defines "logical relationship" as:

> "aris[ing] out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant."

515 F.2d at 1205 (quoting *Revere Copper,* 426 F.2d at 715). The Fifth Circuit suggests, as did the Third Circuit in *Schwab,*

that ancillary jurisdiction of the additional claim may rest on the logical relationship of that claim to either the main claim or the (already ancillary) impleader claim. 515 F.2d at 1205.

The Fourth Circuit, in an opinion that predated *Schwab* and the amendment of rule 18(a), adopted a stance consistent with that later assumed by the Third Circuit. *See Noland Co. v. Graver Tank & Mfg. Co.,* 301 F.2d 43 (4th Cir.1962). The circumstances of *Noland* are not on all fours with this case;[11] nevertheless, we find the court's reasoning useful because of the similarity of the contract disputes. The third-party plaintiff in *Noland* sought not only indemnification to the extent of any recovery awarded the plaintiff against it, but also a recovery for its own loss of anticipated profit. In holding that the district court had jurisdiction of the lost profits claim, the Fourth Circuit panel explained:

> [T]he profit issue is not, in any way, complicated; . . . a determination thereof would not have been unduly burdensome to any party litigant; . . . the litigation would not have been appreciably prolonged by such determination. . . . [T]he facts supporting Noland's ancillary claim for loss of anticipated profit are substantially the same as those developed in the trial of the primary questions. . . .
>
> . . . .
>
> One of the primary objectives of third-party procedure is to avoid circuity and multiplicity of actions.

301 F.2d at 49–50.

The most recent (and novel) attempt by a circuit court to resolve the issue we faced in *Schwab,* in which the authors concluded

---

**11.** Lack of diversity was not a problem in *Noland,* but the amount in controversy appeared to be less than the jurisdictional minimum. The court did not address that issue, however, and a subsequent Fourth Circuit district court opinion, *Gebhardt v. Edgar,* 251 F.Supp. 678 (W.D. Pa.1966), declined to follow *Noland,* holding there was no independent basis of jurisdiction for the third-party plaintiff's claim for damages for his own injuries against the nondiverse third-party defendant. We find the analysis in *Schwab* more persuasive. We also note that the court in *Gebhardt* relied partly on an earlier version of Barron & Holtzoff, the treatise quot-

there was "no authorization" for a third-party plaintiff to join other claims he may have against the third-party defendant. 251 F.Supp. at 681. The court apparently overlooked the fact that in the later edition of the treatise cited in *Schwab* (written after the amendment of rule 18), the authors concluded that, "by analogy to principles settled in other areas," the additional claims should also be considered ancillary. 438 F.2d at 69 (quoting 1A Barron & Holtzoff, *Federal Practice and Procedure* § 426, at 43–44 (Supp. 1969)).

today is that of the Ninth Circuit in *United States v. City of Twin Falls, Id.,* 806 F.2d 862 (1986), *cert. denied,* 482 U.S. 914, 107 S.Ct. 3185, 96 L.Ed.2d 674 (1987). The factual situation generally resembles ours: Twin Falls was sued by the Environmental Protection Agency for violating federal water pollution control statutes. The City impleaded Envirotech Corporation and others responsible for the design and installation of the city water treatment plant (the alleged source of the violations). The City also asserted additional claims for damages arising from the need to repair or replace the treatment plant caused by Envirotech's negligence and breach of warranties. The City and Envirotech were diverse; however, there were other third-party defendants defeating diversity. 806 F.2d at 866.

Envirotech appealed the trial court's ruling that it had ancillary jurisdiction of the City's third-party claims, arguing that the claims were pendent party claims and that because of the lack of complete diversity there was no independent basis of federal subject matter jurisdiction. *Id.* The City argued that once the court properly exercised its ancillary jurisdiction with respect to the City's rule 14(a) claim, it also possessed pendent jurisdiction of the City's additional damage claims under rule 18(a). *Id.*

The *Twin Falls* court held that pendent jurisdiction supported the City's contract and tort claims. The court never directly addressed the difficulty posed by the absence of diversity, relying instead on a new adaptation of the Ninth Circuit definition of "pendent claim," i.e., "state claims which arise from the same 'nucleus of operative facts' as that of a federal claim and which are joined in the same complaint with the federally cognizable claim by the original plaintiffs against the original defendants." 806 F.2d at 867 (quoting *Blake v. Pallan,* 554 F.2d 947, 956–57 n. 11 (9th Cir.1977)). After establishing that the City's indemnity claim was ancillary to the "federally cognizable claim" (EPA's claim against the City), the court proceeded with its novel analysis:

> Viewing the City as the "original plaintiff" in its third-party action against Envirotech as the "original defendant," the City's contract and warranty claims are state claims arising from the same nucleus of operative facts as the indemnity claim, and thus are pendent to its ancillary claim.

806 F.2d at 867.[12] Without discussion, the court cited *Schwab* and *Noland* as according with its conclusion that pendent jurisdiction supported the additional third-party claims.

The *Twin Falls* court distinguished *United States ex rel. Payne v. United Pacific Insurance Co.,* 472 F.2d 792 (9th Cir.), *cert. denied,* 411 U.S. 982, 93 S.Ct. 2273, 36 L.Ed.2d 958 (1973) (hereinafter *Payne*), where it had held the additional claims asserted by the third-party plaintiff were not supported by ancillary jurisdiction. The third-party plaintiff in *Payne,* a surety sued by a subcontractor (Payne) who was not paid by his contractor for his work, impleaded the contractor and also joined other claims against the contractor on performance bonds involving other projects

---

**12.** The Ninth Circuit's upholding of ancillary jurisdiction in *Twin Falls* has been questioned by a panel of the Seventh Circuit for what that court termed *Twin Falls*'s inexact analogy to compulsory counterclaim. *Hartford Accident & Indem. Co. v. Sullivan,* 846 F.2d 377, 381 (7th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 2428, 104 L.Ed.2d 985 (1989). (The *Sullivan* court also questioned the results in *Mayer Paving & Asphalt Co. v. General Dynamics Corp.,* 486 F.2d 763, 772 (7th Cir.1973), *cert. denied,* 414 U.S. 1146, 94 S.Ct. 899, 39 L.Ed.2d 102 (1974) and *Revere Copper,* 426 F.2d at 716, on the same ground.) The *Sullivan* court observed that the filing of a compulsory counterclaim "is in a sense involuntary" because a defendant who fails to plead such a claim may be barred from bringing it in a separate state action, 846 F.2d at 381, while "impleader clearly is voluntary," *id.* at 382. The court concluded instead that analogy to *permissive* counterclaim was proper, at least under the circumstances of *Sullivan. Id.*

The *Sullivan* court's view of ancillary jurisdiction is narrow. It declined even to concede the ancillarity of an impleader claim, holding that whether the claim arises from the same transaction or occurrence as the main claim "is the proper test to use in determining which Rule 14(a) claims are within the federal courts' ancillary jurisdiction if the doctrine is narrowly construed in the impleader setting, as we think it should be." *Id.*

(projects not involving Payne, the original plaintiff). The Ninth Circuit held that, unlike in *Schwab*, there was

> no close nexus between the third-party claim and the original suit by Payne.... Regardless of the success or failure of Payne's suit, United's claim against [the third-party defendants] would persist entirely independently. The fact that the third-party claim arose from the same general background does not suffice as a nexus.

472 F.2d at 795.[13]

While we agree with the results in *Twin Falls* and *Payne*, we find the Ninth Circuit's "original plaintiff" approach in *Twin Falls* unnecessary and more puzzling than helpful.[14] It is our impression the Ninth Circuit would have reached the same result in *Twin Falls* had it followed the Third Circuit's (more traditional) approach in *Schwab*. We do not subscribe to the "orig-inal plaintiff" analogy, nor do we believe that analytical technique is necessary to the resolution of the jurisdictional issue in these cases. The foregoing cases from other circuits and the following district court opinions corroborate that conclusion.

Two district courts within this circuit have reached the conclusion we reach today on the basis of similar facts. In *United of Omaha Life Ins. Co. v. Reed*, 649 F.Supp. 837, 842 (D.Kan.1986), United sought a declaration of its liability under a policy issued to defendant Reed. Reed counterclaimed, seeking payment under its policy, and also filed a third-party complaint against the insurance company's agent, asserting similar claims as well as additional claims for damages. There was no diversity between Reed and the agent, and the agent moved for dismissal of the third-party complaint on grounds that, *inter alia*, the court lacked subject matter jurisdiction.[15]

**13.** Curiously, the *Payne* court also failed to address the absence of diversity between the third-party litigants. After observing that the result in *Schwab* was, on its facts, "undoubtedly correct," the court proceeded to stress the strong relationship between the principal and disputed claims in that case. But the court ignored the *Schwab* court's discussion of the no-diversity jurisdictional hurdle. 472 F.2d at 795.

**14.** Indeed, the Ninth Circuit contributed to the confusion in a subsequent opinion. In a case involving questions of ancillary and pendent jurisdiction in the context of cross-claims and joinder of parties under Fed.R.Civ.P. 13(h), the court stated that *Twin Falls* had treated the "third-party complaint under Fed.R.Civ.P. 14(a) as an 'original' complaint for purposes of ancillary jurisdiction." *Danner v. Himmelfarb*, 858 F.2d 515, 522 (9th Cir.1988). This is not technically correct. The *Twin Falls* court did treat the third-party complaint as an "original" complaint (or at least the third-party plaintiff as an "original" plaintiff), but it distinguished between the defendant's third-party indemnity claim under rule 14(a), over which it held there was *ancillary* jurisdiction, and the defendant's additional damages claims joined under rule 18(a), which it ruled were supported by *pendent* jurisdiction.

In our view further obfuscating matters, the *Danner* court addressed the jurisdictional questions raised by the case via two analytical theories. Under the first, which adhered to traditional, if abstract, definitions of pendent claims and ancillary jurisdiction, the court held that the cross-claims fell within the district court's ancillary jurisdiction. 858 F.2d at 521. Its sec-ond approach, modeled on *Twin Falls*, viewed the cross-claimant "as the plaintiff for purposes of the separate trial on his cross-claim," thus rendering it "possible ... to treat [the] cross-claims and joinder of additional parties solely as a matter of pendent jurisdiction." 858 F.2d at 522. The court reached the same result in each analysis and concluded, as has the Supreme Court, that it was unnecessary in this case "to decide 'whether there are any "principled" differences between pendent and ancillary jurisdiction.'" 858 F.2d at 523 (quoting *Owen Equipment*, 437 U.S. at 370 n. 8, 98 S.Ct. at 2401 n. 8)). We are baffled by the *Danner* panel's approach and conclude it does not advance the goal of defining the contours of ancillary jurisdiction.

**15.** To reach the issue of the propriety of the additional claims, the court made two preliminary determinations. First, adopting the reasoning of Professors Wright, Miller, and Moore (quoted earlier in the text of our opinion), the court found that it had ancillary jurisdiction of the insured's third-party pass-through claim, despite the absence of diversity. The court ruled that *Owen Equipment* was inapposite because it "held only that, in an action based on diversity of citizenship, an independent basis for federal jurisdiction must exist in order for the [original] *plaintiff* to assert a claim against the third party defendant." 649 F.Supp. at 840 (emphasis in original). Next, the court rejected the agent's contention that the third-party claim was not proper under rule 14(a) because it sought monetary damages while the initial suit was for a declaratory judgment. The court held that the third-party complaint was proper, given the sub-

With respect to the propriety of the additional third-party claims asserted by Reed, the court reasoned:

> The general rule is that once a court has determined that a proper third party claim has been asserted, it should allow joinder [under Fed.R.Civ.P. 18(a) ] of any other claims the third party plaintiff may have against the third-party defendant.... [T]he requirement of subject matter jurisdiction ... is met if the additional claim arises out of the same transaction or occurrence as the initial claim for liability.

649 F.Supp. at 842 (citing 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1452, at 95 (Supp.1986)); *Executive Fin. Servs. v. Heart Chec, Inc.*, 95 F.R.D. 383, 384 (D.Colo.1982). *See also Seitter v. Schoenfeld*, 678 F.Supp. 831, 838 (D.Kan. 1988) (citing 3 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 14.03(3) (2d ed. 1987) ("concept of ancillary jurisdiction also properly justifies taking jurisdiction over an additionally joined claim of the third-party plaintiff against the third-party defendant, provided the additionally joined claim is sufficiently related to the original claim to be deemed ancillary").[16]

The Kansas district court ruled that jurisdiction of Reed's "additional or alternative claim for misrepresentation" against the agent was proper, in that "this added claim arises out of the same transaction, i.e., the insurance policy and negotiations concerning the policy." 649 F.Supp. at 842. For reasons not relevant here the court held that other claims asserted by Reed would be dismissed.

In accord with *Reed* is the opinion of the district court for Colorado in *Heart Chec*, 95 F.R.D. at 384. The defendants in *Heart Chec* were sued for breach of a lease.

They filed a third-party complaint against their lawyers · who prepared the lease agreement, seeking to recover any amount for which they might be held liable to the plaintiff, as well as additional compensatory and punitive damages. All of the third-party litigants were residents of Colorado.

Judge Weinshienk stated the test for determining whether a court has ancillary jurisdiction of an additional third-party claim as "whether the claim involves the same core of facts as the original claim, and whether both arise out of the same transaction." 95 F.R.D. at 384 (citing *Schwab*, 438 F.2d at 68–71, and *Payne*, 472 F.2d 792). The court easily found that all claims arose from a common transaction, the lease agreement. It further concluded that the purposes of ancillary jurisdiciton— " 'to prevent the relitigation in other courts of the same issues ...' and to promote the economical and expeditious administration of justice by avoiding a multiplicity of suits"—would be accomplished by permitting the defendants to litigate their claims in one suit. 95 F.R.D. at 384 (quoting *Payne*, 472 F.2d at 794). Accordingly, the court held that the additional damages claims were ancillary to the principal claim.

We hold that the weight of authority and the better-reasoned cases support our conclusion that the district court's ancillary jurisdiction encompassed all of Hanson's third-party claims. Having exercised its ancillary jurisdiction over Hanson's proper rule 14(a) indemnity claim against Langan, it was within the court's power and its discretion also to hear and decide Hanson's delay damages claim against Langan, given that that claim arose from the same transaction or occurrence as the principal claim by King Fisher against Hanson. This result, true to the constitutional and statutory limits on the federal courts' jurisdic-

---

stantial similarity of the facts relevant to both claims and that exercise of jurisdiction would promote judicial economy and not be unfair to the third-party defendant. 649 F.Supp. at 841–42.

**16.** *Seitter* is not particularly helpful to our analysis, however. There, once the Kansas district court determined the third-party defendant had been properly impleaded under rule 14(a),

it held the third-party plaintiff's independent claims for breach of contract, breach of warranty, and misrepresentation were within its ancillary jurisdiction. 678 F.Supp. at 837–38. The court apparently did not test the relation of those independent claims to the third-party plaintiff's indemnity claim or to the claim in the original action. It also was not clear from the opinion whether the third-party litigants were diverse.

tion, is also consistent with the notions of judicial economy and common sense from which the judge-made doctrine of ancillary jurisdiction took root. To confine the district court's jurisdiction here so as to exclude the added third-party claim would be to thwart the court's ability "effectively to resolve an entire, logically entwined lawsuit." *Owen Equipment*, 437 U.S. at 377, 98 S.Ct. at 2404. We have found no evidence that Congress intended such a constraint.

### C. District Court's Discretion to Decide Third–Party Claims

■ Having determined that the district court had jurisdiction of Hanson's third-party claims against Langan in the first instance, it is next necessary to consider whether the subsequent settlement of King Fisher's claim against Hanson deprived the court of jurisdiction of the ancillary claims. The district court held it did not lose its power to decide the third-party claims after the plaintiff's cause of action was settled. 717 F.Supp. at 729. Moreover, in light of the facts that Langan had made no claim of unfairness and the time already spent on the case, the trial court believed it did not abuse its discretion in retaining the third-party claims. *Id.* (citing *Cenco, Inc. v. Seidman & Seidman*, 686 F.2d 449 (7th Cir.) *cert. denied*, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982); *Transok Pipeline Co. v. Darks*, 565 F.2d 1150 (10th Cir.1977) *cert. denied*, 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978)).

We agree with the district court, finding the weight of authority is that, "if jurisdictional prerequisites are satisfied when the suit is begun, subsequent events will not work an ouster of jurisdiction." *Dery v. Wyer*, 265 F.2d 804, 808 (2d Cir.1959); *see* 3 *Moore's Federal Practice* ¶ 14.26, at 14–113 (2d ed. 1989). *But see Danner v. Himmelfarb*, 858 F.2d 515, 523 (9th Cir.1988) ("it is our practice to dismiss state law claims once the federal claim has been resolved"). "[A] rule that ancillary jurisdiction of a third-party claim terminates on a determination of the main claim [would] seriously impair the utility of the Rule, breed confusion and generate many sterile

jurisdictional disputes." 265 F.2d at 809 (quoted in *Moore's Federal Practice* ¶ 14.26, at 14–114). The principle applies as well when the main claim has been settled, as was the case here, or dismissed on its merits. *See, e.g., Nishimatsu*, 515 F.2d at 1204–05, 1204 n. 2; *Pennsylvania R.R. Co. v. Erie Ave. Warehouse Co.*, 302 F.2d 843, 846 (3d Cir.1962). As the Second Circuit observed in *Dery*, to hold otherwise would have the undesirable result of discouraging settlements. 265 F.2d at 808.

Because ancillary jurisdiction is a "doctrine of discretion," *Danner*, 858 F.2d at 523; *cf. United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), it is axiomatic that it was within the district court's discretion to retain or dismiss Hanson's third-party claims after the settlement of the main claims. The factors relevant to that decision have been summarized elsewhere. *See, e.g., Dery*, 265 F.2d at 808–09; *Twin Falls*, 806 F.2d at 868; C. Wright & A. Miller, § 1444, at 234–37 (1971), 97–98 nn. 1–2 (1989 Supp.). We find that the interests of "judicial economy, convenience, and fairness," *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139, were served here by the district court's exercise of jurisdiction. We note also Hanson's state claims may have been time-barred if the district court had dismissed them following settlement of the principal claims. Under these circumstances, we hold the district court was within its discretion in hearing and deciding the contested third-party claim.

Because we find that the district court properly exercised jurisdiction of the contested claim, we deny the relief requested under Fed.R.Civ.P. 60(b)(4). The judgment of the district court is AFFIRMED.